**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No. 2:25-cr-00039** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | |
| **MICHAEL STANLEY MORRIS, III** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter comes before this Court on the Defendant Michael Stanley Morris, III's motion to suppress evidence. (ECF No. 30). For the reasons set forth below, Defendant's motion is **DENIED**. (ECF No. 30).

## I.    BACKGROUND

This Court summarizes the facts as stated in the parties' briefing on Defendant's motion to suppress and as reflected by the evidence at the evidentiary hearing, held on July 11, 2025.

### A. Investigation and Search Warrants

On August 29, 2024, Columbus Division of Police ("CPD") officers responded to a domestic dispute call involving Mr. Morris and Mykayla Jackson. (ECF No. 30 at 2). Ms. Jackson reported that Mr. Morris and a female companion arrived at Ms. Jackson's apartment located at 2786 Citizens Place, Apt. B ("Residence"), where Mr. Morris intended to gather his personal belongings and move out of the Residence. (*Id.*). Reportedly, an altercation arose between Ms. Jackson and Mr. Morris' female companion in the parking lot of the apartment complex. (*Id.*). Mr. Morris allegedly brandished a firearm, "pistol whipped Ms. Jackson," and then discharged his weapon into the asphalt to break up the altercation. (*Id.*). Mr. Morris and his female companion then fled from the scene of the shooting.

1

Law enforcement who arrived at the scene recovered a fired shell casing from the shooting. That shell casing was compared to evidence recovered in other cases, and it was determined to be a likely match to the ballistics evidence recovered from two other incidents that occurred in Columbus in January 2022 and November 2023. During the investigation, law enforcement learned that Morris was federally prohibited from possessing a firearm, due to a conviction in the Franklin County Court of Common Pleas, in case number 20-CR-3886, of Discharge of a Firearm over a Public Roadway.

On September 3, 2024, Seargeant Terrance D. Vollmer, Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") was assigned to the case. He conducted a query of the National Crime Information Center ("NCIC") and learned that Mr. Morris is prohibited from possessing a firearm pursuant to Title 18 United States Code § 922(g)(1). On September 5, 2024, Sergeant Vollmer accessed information from the Ohio Bureau of Motor Vehicles ("BMV") and learned that Morris had provided a phone number ending with -8108 the previous month. The BMV records also revealed that he had recently reported his home address as 836 S. Harris Ave., Columbus, Ohio 43204.[1] Sergeant Vollmer then contacted AT&T and learned that Sinch Voice was the carrier for the phone number.

On September 6, 2024, Vollmer applied for a search warrant to Sinch Voice to "disclose phone records and location information and to establish a pen register and trap and trace" for the phone number ending with -8108 in the Franklin County Court of Common Pleas. ("Sinch Voice Warrant"). On September 9, 2024, Sinch responded, advising that it is a Voice over Internet Protocol company and does not provide cellular service for its customers. As such, execution of the search warrant did not yield the information investigators had sought. Instead, investigators

---

[1] Sergeant Vollmer testified that he visited the address twice and observed no vehicles in the driveway or any other activity to suggest that Morris was living there.

learned from Sinch Voice that there was an IP address associated with the phone number. A search through open-source databases identified the internet service provider ("ISP"). On September 13, 2024, investigators issued administrative subpoenas to ISP for that IP address ("ISP Subpoenas").

On September 24, 2024, police officers responded to another gunshot incident—at 317 S. Highland Avenue in Columbus—after receiving reports of several shots being fired. Officers recovered 23 fired cartridge casings from the scene—21 casings from the street outside the residence, and two inside the front door of the residence. No one reported being struck by the gunshots, and no one reported witnessing the incident. The ballistic evidence from this incident matched the ballistic evidence from the aforementioned three incidents, *i.e.* the shooting at the Residence, the January 2022 shooting, and the November 2023 shooting.

On October 3, 2024, officers learned from the results of the ISP Subpoenas that the subscriber for the account was listed as Mykayla Jackson, with the Residence listed as the physical address. As a result of this information, law enforcement began conducting surveillance at the Residence. They parked a surveillance vehicle outside the Residence on October 3, 2024, in the morning. On October 7, 2024, Vollmer reviewed the surveillance footage. He observed that, on October 3, 2024, at 7:27 p.m., an individual matching Mr. Morris' description and another male walked out of the Residence and used a key to lock the door. At approximately 8:06 p.m., Mr. Morris returned to the Residence with a female and used a key to unlock the door. Vollmer also discovered that on October 7, 2024, at 6:05 p.m., Mr. Morris walked out of the Residence with Mykayla Jackson.

That same day, on October 7, 2024, Sergeant Vollmer obtained a search warrant for the Residence ("Residence Search Warrant"). At around 9 a.m. on October 8, 2025, officers executed the Residence Search Warrant and recovered an AR pistol, ammunition, fired cartridge casings, and a cell phone. Investigators also took pictures of paperwork tying Morris to the home, including

a debit card, an Ohio Direction Card, Morris's Ohio driver license, an Ohio vehicle registration in Morris's name, an Ohio interim identification card in Morris's name, and Morris's birth certificate.

On October 15, 2024, TFO Vollmer signed an affidavit in support of a warrant to search the cellphone recovered during a search of the Residence. On October 15, 2024, TFO Vollmer obtained a warrant to search the cellphone. ("Cellphone Search Warrant").

### B. Arrest and Interview

Officers arrested Mr. Morris on October 8, 2025, and transported him to the Franklin County Jail. At approximately 1:07 p.m., Sergeant Vollmer and CPD Detective Jerry Orick began interviewing Mr. Morris. Initially, Sergeant Vollmer introduced himself and Detective Orick to Morris and explained that they were both Task Force Officers with ATF. Sergeant Vollmer asked Morris if anyone had advised him of his rights, to which Morris replied "No." Before getting into the substance of the interview, Sergeant Vollmer read Morris his rights from a Constitutional Rights form. After advising him of his rights, Sergeant Vollmer asked Morris if he understood his rights, to which he responded affirmatively. Sergeant Vollmer then instructed Morris to acknowledge those rights by signing his name under the notation "I have read and been read the statement of my rights as written above. I understand my rights." Morris affixed his signature and continued to respond to the questions posed by the officer.

Specifically, Morris stated that he spoke English, completed the ninth grade, and had no hearing or vision problems. When asked about alcohol and drug use in the last 12 to 24 hours, Morris replied that he had ingested approximately a half pint of liquor, "like tequila," and that he recently turned 25. According to Morris, he had been previously locked up and went to prison for discharging a firearm. He provided details about the incident and concluded by stating, "I did my time and came home." When asked about the felonious assault charge in August 2024, Morris

relayed that he and Ms. Jackson were "cool" and that she was "still [his] girlfriend." He was adamant that it was a "big misunderstanding" and that his girlfriend was going to be by his side.

The officers continued inquiring about the parties and witnesses involved in the felonious assault matter and the firearm that was discharged. Sergeant Vollmer asked Morris when he last had a gun in his possession, and Morris responded that it had been over a year since he possessed a firearm. Sergeant Vollmer and Detective Orick then inquired about the AR pistol that Morris possessed at 2:19 a.m. on October 8, 2024. Morris denied possessing the firearm. The officers then advised Morris that he was depicted on recorded surveillance footage with the firearm. Morris again denied possessing the firearm. Sergeant Vollmer and Detective Orick continued to ask about the firearm which Morris continued to deny. Morris requested to see the actual surveillance footage and Sergeant Vollmer accessed the footage. Upon viewing the footage of him walking outside of his residence while carrying the AR pistol, Morris admitted "yeah, I possessed it, but it's not mine."

When the officers continued to question Morris as to details about the pistol, he repeatedly denied owning the pistol and would not say who or where he got it from. The interview concluded at approximately 1:50 p.m.

### C. Procedural History

On February 5, 2025, a criminal complaint was filed against Defendant Michael Stanley Morris III, with an indictment following on March 13, 2025. (ECF Nos. 1, 18). Defendant was charged with Possession of a Firearm or Ammunition by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1). (ECF Nos. 1, 18). After his arrest, he was appointed counsel under the Criminal Justice Act and ordered detained pending trial. (*See* ECF Nos. 2-13). On June 12, 2025, Defendant moved to suppress the evidence collected during the execution of multiple search warrants, arguing that the supporting affidavits lacked probable cause and particularity, and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (ECF No. 30). Mr.

Morris also moved to suppress all statements made following his arrest under the Fifth and Sixth Amendments to the United States Constitution. (*Id.*). On July 3, 2025, the Government opposed the motion. (ECF No. 31). This Court held an evidentiary hearing on July 11, 2025, and heard testimony from Sergeant Vollmer. At the evidentiary hearing, Defendant withdrew his request for a *Franks* hearing.

## II. LAW AND ANALYSIS

### A. Motion to Suppress Evidence

Morris moves to suppress all the evidence collected pursuant to the search warrants to obtain cell phone location data and to search the Residence.

The Fourth Amendment to the United States Constitution protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. The Amendment mandates that warrants be based on the government's showing of "probable cause" and include language "particularly describ[ing] the place to be searched, and the persons or things to be seized." *Id*. When officials violate these commands, courts generally suppress the resulting evidence. *United States v. Bateman*, 945 F.3d 997, 1005 (6th Cir. 2019). "But because the Fourth Amendment by its terms and history does not require exclusion . . . courts will not exclude evidence when the costs of suppression outweigh the benefits of deterrence," *United States v. Harney*, 934 F.3d 502, 505 (6th Cir. 2019) (citing *Davis v. United States*, 564 U.S. 229, 236–37 (2011)), "such as when reasonable officers rely on a magistrate's warrant in good faith," *id*. (citing *United States v. Leon*, 468 U.S. 897, 919–211 (1984)). Notwithstanding this exception, an officer still "cannot reasonably presume" that a "facially deficient" warrant is valid. *Leon*, 468 U.S. at 923. Evidence obtained as a result of a facially invalid warrant cannot be admitted pursuant to the "good faith" exception. *See id*.

Beginning with the Sinch Voice Warrant, Morris notes that Page 1 of Vollmer's affidavit mistakenly refers to the target phone number as one ending in -3566, not -8108. He also argues that TFO Vollmer's affidavit recites events that "offer nothing in support of probable cause for issuance of the warrant to gather cell phone evidence." (ECF No. 30 at 9). According to Morris, the offenses listed in the affidavit in which Morris was a suspect, bear "no relevance or nexus to the Crime Gun or any other firearm being found at the [Residence]." (*Id.* at 9–10).

"Search warrant affidavits," however, "are to be judged on the totality of the circumstances, not line by-line scrutiny." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010). As the Supreme Court observed, "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation" and should be interpreted in a "commonsense" rather than a "hypertechnical" manner. *Illinois v. Gates*, 462 U.S. 213, 235–36 (1983). Interpreting Vollmer's affidavit in a commonsense manner, as this Court must, the issuing judge had a substantial basis for concluding that probable cause exists. Vollmer's affidavit recited the offenses committed by Morris, including Weapons Under Disability and Felonious Assault, the NIBIN results of a firearm linked to him, his prohibited status to possess firearms, his current phone number ending in -8108, and the necessity of obtaining the requested information to aid in an ongoing investigation.

The drafting mistake on the first page is insufficient to invalidate the entire search warrant, because the affiant, the judge, and the ISP were clear that the phone number for which records were being requested was the number ending -8108. *See United States v. Abdalla*, 972 F.3d 838, 846 (6th Cir. 2020) ("Even though a warrant containing the wrong address can sometimes risk a mistaken search, such an 'error does not invalidate a search warrant if the warrant includes other specific descriptors that remove the probability that the wrong location could be searched[.]'" (quoting *United States v. Crumpton*, 824 F.3d 593, 612 (6th Cir. 2016)); *United States v. Hang Le–Thy Tran*, 433 F.3d 472, 479 (6th Cir. 2006) ("An error in description does not ... automatically

7

invalidate a search warrant."). Defendant's argument that the Sinch Voice Search Warrant is deficient is therefore meritless.

Morris also challenges the Residence Search Warrant as lacking probable cause. He contends that "TFO Vollmer falsely stated in his affidavit to search the [Residence] Address that Mr. Morris was residing at the [Residence] Address," and that TFO Vollmer "knew this to be false, as he previously stated in his [other search warrant] affidavit that Mr. Morris had a different address on file with the BMV." (ECF No. 30 at 9). Vollmer testified at the hearing, however, that he twice visited the address that Morris reported to the BMV and found no evidence of Morris living there. Upon further investigation and information collected pursuant to the ISP Subpoenas and surveillance footage, Vollmer reasonably believed that Morris resided at the Residence. The facts provided in the affidavit, which Vollmer reasonably believed, adequately established that Morris previously resided at the Residence as recently as August 29, 2024, the date of the felonious assault; that the recent phone number that Morris provided the Ohio BMV was linked to the Residence; and that, in October 2024, Morris was observed entering and exiting the Residence with a key. Contrary to Defendant's arguments, there was "a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). The Residence Search Warrant sought to locate Morris as it relates to the felony warrant, as well as locate and seize evidence related to the Felonious Assault charge and Weapons Under Disability offense.

This case is not one where the warrants are "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *United States v. Dunn*, 269 F. App'x 567, 571 (6th Cir. 2008) (quoting *Groh v. Ramirez*, 540 U.S. 551, 565 (2004)); *see also Massachusetts v. Sheppard*, 468

U.S. 981, 988 & n.5 (1984) (accepting that the warrant did not accurately describe the items to be seized and applying the good-faith exception to the exclusionary rule).

Defendant's motion to suppress the evidence obtained pursuant to the search warrants is therefore denied.

### C. Motion to Suppress Statements

Defendant also moves to suppress his post-arrest statements to Sergeant Vollmer and Officer Orrick, specifically his admission to possessing the pistol. Morris argues that, due to his alleged level of intoxication at the time of the post-arrest interview, his statements to detectives were involuntary and obtained in violation of the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Fifth Amendment prohibits an individual from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has made clear that "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). Under *Miranda v. Arizona*, 384 U.S. 436 (1966), an individual who is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning," *id*. at 478, must be provided information on the following "[p]rocedural safeguards" to protect his privilege against self-incrimination:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id*. at 479. A suspect may elect to waive his *Miranda* rights if the waiver is made "voluntarily, knowingly and intelligently." *Id*. at 444. Whether a waiver has been properly made depends on

two factors. *United States v. Hampton*, 572 F. App'x 430, 432–33 (6th Cir. 2014). First, whether the right was relinquished voluntarily turns on whether the waiver was the product of a "free and deliberate choice" rather than the result of "intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Second, whether it was knowingly and intelligently waived turns on a determination that the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. In evaluating both factors, courts must consider the "totality of the circumstances surrounding the interrogation." *Id*. (internal quotation marks omitted).

As a preliminary matter, Defendant introduced no evidence of any official coercion, and an "impaired cognitive or volitional capacity" does not itself render a confession involuntary. *See United States v. Treadwell*, 11 F. App'x 502, 510 (6th Cir. 2001); *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989) (finding evidence of an impaired "cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary."). In cases involving alleged intoxication, the Sixth Circuit has articulated that "the important inquiry is whether the interviewing officers perceived there to be any 'impairments' to a knowing and intelligent waiver, when the totality of the circumstances are considered." *Hampton*, 572 F. App'x at 435. The totality of the circumstances includes "defendant's age, education, intelligence, prior experience with the criminal justice system, the length and nature of the questioning, the advice regarding *Miranda* rights, and the use of physical punishment." *Id*.

As Vollmer credibly testified, the interview lasted approximately 43 minutes in an interview room at the Franklin County Jail; Morris was unrestrained; and there no breaks in the interview. Morris, age 25, was able to read and write, and had a ninth-grade education. He was admittedly familiar with the criminal justice system and acknowledged that he had been to prison

for discharging a firearm. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (explaining that a defendant's repeated experience with the criminal justice system had a bearing on his ability to fully comprehend his rights and the consequences of waiving them).

Although Morris admitted to consuming half a pint of a tequila-like liquor in the last 24 hours, he "introduced no evidence that the agents engaged in coercive activity of any sort or that they knew of his supposedly weakened mental state and chose to exploit it." *See Treadwell*, 11 Fed. App'x at 511. Morris was alert and lucid at the time of his *Miranda* waiver and throughout the interview; and he appeared to understand the officer's questions and answer coherently. *See Hampton*, 572 Fed. App'x at 435 (finding a knowing and intelligent waiver where the defendant was alert, lucid and his responses were coherent despite his alleged sleep deprivation and alcohol consumption); *United States v. Dunn*, 269 Fed. App'x 567, 573 (6th Cir. 2008) (upholding that the defendant's waiver was knowing and intelligent where he was "alert and quick to respond to questions, and appeared to understand his Miranda rights" even though he claimed he was under the influence of Vicodin and marijuana); *Wernert v. Arn*, 819 F.2d 613 (6th Cir. 1987) (upholding the admission of a confession even though the defendant claimed that her drug and alcohol ingestion the day before and that her lack of food and sleep prohibited her from voluntarily waiving her rights).

Based on the totality of the circumstances, this Court concludes that Morris made a knowing and intelligent waiver of his *Miranda* rights when he elected to speak with officers after his arrest, and his involuntary confession claim must fail. The motion to suppress his post-arrest statements is therefore denied.

## III.  CONCLUSION

For the foregoing reasons, Defendant's motion is **DENIED**.  (ECF No. 30).

**IT IS SO ORDERED.**

_____

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATE: July 28, 2025**